## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE SEVENTEENTH   JUDICIAL CIRCUIT,
IN AND FOR BROWARD   COUNTY, FLORIDA

Case No.:_____
Judge: _____

Nana Mensah
 Plaintiff
        vs.
LM GENERAL INSURANCE COMPANY a/k/a LIBERTY MUTUAL
Defendant

**II.    AMOUNT OF CLAIM**
    Please indicate the estimated amount of the claim rounded to the nearest dollar $1,000,000

**III.    TYPE OF CASE**    (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☒ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure
  - ☐ Homestead residential foreclosure
  - ☐ Non-homestead residential foreclosure
  - ☐ Other real property actions
- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical

- ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

- ☐ County Civil
  - ☐ Small Claims up to $8,000
  - ☐ Civil
  - ☐ Replevins
  - ☐ Evictions
  - ☐ Other civil (non-monetary)

**EXHIBIT**

**A**

**In the Circuit Court of the Seventeenth Judicial Circuit
In and for Broward County, Florida**

Nana Mensah

Plaintiff

vs.

Case No: Cace 20- 10749

Judge:
Division: 13

Defendant

LM General Insurance
Company

**CLERK'S CERTIFICATE OF COMPLIANCE**



F I L E D
JUL 0 2 2020
By

**I hereby certify that pursuant to Administrative Order, No. 2020-4-Civ/UFC/CO:**

**"ADMINISTRATIVE ORDER DIRECTING CLERK OF COURTS WITH REGARD
TO DISMISSED CIVIL OR FAMILY CASES",**

**The Clerk has conducted a search for all previous existing civil cases related to these two
parties.**

**Listed below are all the aforementioned related cases:**

None

Brenda D. Forman
Circuit and County Courts

By: L. Calixte

Deputy Clerk

DCN: 0720200706321860546916010     Received Date:07/06/2020

Filing # 109759407 E-Filed 07/02/2020 04:57:47 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

NANA MENSAH,                                     GENERAL JURISDICTION DIVISION

     **Plaintiff,**                             CASE NO.: CACE-20-010749

v.

**LM GENERAL INSURANCE COMPANY
a/k/a LIBERTY MUTUAL,**

     **Defendant.**

_____/

## NOTICE OF REQUEST FOR
## WAIVER OF SERVICE OF PROCESS

The Plaintiff, NANA MENSAH, by and through undersigned counsel, files this Notice of
Request for Waiver of Service of Process pursuant to Florida Statute § 1.070(i)(4) and states as
follows:

     1.     That Plaintiff hereby notifies Defendant of the commencement of the action and
requests that the Defendant Waive Service of a Summons.

     2.     That Plaintiff hereby requests Defendant waive service of a summons by returning
the attached Acceptance and Waiver of Service of Process with the included prepaid envelope
attached herewith.

     3.     That Defendant has 20 days from the date on the Certificate of Service to return the
waiver, or if the address of the Defendant is outside of the United States, 30 days from the date on
which it is received to return the waiver; and

     4.     That if a defendant fails to comply with a request for waiver within the time
provided herein, the court shall impose the costs subsequently incurred in effecting service on the
defendant.

**Page 1 of 3**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2020, a true and correct copy of the foregoing document was filed with the Clerk of the Court using Florida Courts E-Filing Portal and that two copies were sent via Certified Mail, Return Receipt Requested and via email to Defendant at:

> LM General Insurance Company
> Attn: Kelly Vinson
> PO Box 515097
> Los Angeles, CA 90051
> Email: Kelly.Vinson@LibertyMutual.com

Respectfully submitted,

Tucker Law ®
*Attorney for Plaintiff*
200 SE 6TH Street, Suite 405
Fort Lauderdale, FL 33301
Telephone: 954.204.0444
Fax: 954.358.4946
Matt@TuckerUp.com
www.TuckerUp.com

By: /s/ Matthew Sean Tucker
Matthew Sean Tucker
Florida Bar No.: 90047

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2020, a true and correct copy of the foregoing

document was filed with the Clerk of the Court using Florida Courts E-Filing Portal and that two

copies were sent via Certified Mail, Return Receipt Requested and via email to Defendant at:

LM General Insurance Company
Attn: Kelly Vinson
PO Box 515097
Los Angeles, CA 90051
Email: Kelly.Vinson@LibertyMutual.com

Respectfully submitted,

Tucker Law ®
*Attorney for Plaintiff*
200 SE 6TH Street, Suite 405
Fort Lauderdale, FL 33301
Telephone: 954.204.0444
Fax: 954.358.4946
Matt@TuckerUp.com
www.TuckerUp.com

By: /s/ Matthew Sean Tucker
Matthew Sean Tucker
Florida Bar No.: 90047

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

**NANA MENSAH,**                             GENERAL JURISDICTION DIVISION

      **Plaintiff,**                             CASE NO.:

v.

**LM GENERAL INSURANCE COMPANY
a/k/a LIBERTY MUTUAL,**

      **Defendant.**
_____/

### ACCEPTANCE AND WAIVER OF SERVICE OF PROCESS

    COMES NOW, LM GENERAL INSURANCE COMPANY a/k/a LIBERTY MUTUAL,

Defendant in the above-styled cause and hereby acknowledges receipt of a copy of the Complaint

in this action and in so doing accepts service of the same and specifically waives formal service of

process in the State of Florida pursuant to Fla. R. Civ. P. 1.070.

    DATED this _____ day of _____, 20___.

                              By: _____
                              Signature of Defendant
                              Printed Name: _____
                              Address: _____
                              City, State, Zip: _____
                              Telephone Number: _____

STATE OF _____        }
                       }ss
COUNTY OF _____        }

    BEFORE ME this day appeared _____, [ ] personally known to me
or [ ] who has produced a _____ as identification, who, being first
duly sworn, deposes and says that the answers contained in the foregoing Interrogatories are true
to the best of her knowledge and belief.
    SWORN to and SUBSCRIBED me this _____ day of _____, 20___.

                              _____
                              NOTARY PUBLIC
                              State of Florida at Large
                              My Commission Expires:

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

**NANA MENSAH,**

     **Plaintiff,**

**v.**

**LM GENERAL INSURANCE COMPANY
a/k/a LIBERTY MUTUAL,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, NANA MENSAH, by and through undersigned counsel, files this Complaint against LM GENERAL INSURANCE COMPANY a/k/a LIBERTY MUTUAL, and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

2. Plaintiff, NANA MENSAH, at all times material hereto, was a resident of Miami-Dade County Florida, residing in Doral, Miami-Dade County, Florida, was over the age of eighteen (18) years, and is otherwise *sui juris*.

3. That at all times material hereto, Defendant, LM GENERAL INSURANCE COMPANY a/k/a LIBERTY MUTUAL (hereafter "LIBERTY MUTUAL") was and is an insurance company licensed, authorized, and presently doing business in Broward County, State of Florida, by selling and/or servicing automobile polices of insurance and is otherwise *sui juris*.

4.      Upon information and belief, this Court has personal jurisdiction over the Defendant in that the:

a.  Defendant has operated, conducted, engaged in, carried on business or business venture in Florida pursuant to and within the meaning of § 48.193(1)(a), Fla. Stat. and from which this action arises; or

b.  Defendant has committed a tortuous act within the state, pursuant to and within the meaning of § 48.193(1)(b), Fla. Stat. and from which this action arises; or

c.  Defendant has engaged in substantial and not isolated activity within this state, including the Southern District of Florida, pursuant to and within the meaning of § 48.193(2), Fla. Stat. and from which this action arises, at least by virtue of transaction of business within the State of Florida.

5.      Venue is proper in Fort Lauderdale, Broward County, Florida because the incident from which this cause of action arises occurred in Broward County, Florida.

## GENERAL ALLEGATIONS

6.      On or about October 15, 2018, Katia Loomis owned, maintained, and/or operated a motor vehicle that was operated at or near the intersection of Hallandale Beach Blvd and NW 8th Ave, in Broward County, Florida, when the motor vehicle owned, maintained, and/or operated by Katia Loomis, collided with a motor vehicle owned and operated by Plaintiff.

7.      On or about October 15, 2018, and at all material times, Katia Loomis was in possession, custody and control of their motor vehicle, which was an instrumentality that is peculiarly dangerous in its operation.

8.      On or about October 15, 2018, and at all material times, Katia Loomis improperly and carelessly operated their motor vehicle so that it collided with the motor vehicle in which Plaintiff was traveling.

9.      As a result of the collision, Plaintiff suffered bodily injuries and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical and nursing care and treatment.  The losses are either permanent or continuing and Plaintiff will suffer the expenses and losses in the future.

10.     At all material times alleged herein, Katia Loomis owed a duty to exercise reasonable care in the ownership, operation and/or use of her motor vehicle for the benefit and safety of other individuals on public roadways.

11.     At all material times, Katia Loomis breached her duty of care to other individuals on the above-described public roadways, and in particular to Plaintiff, as Katia Loomis was negligent and careless in the ownership, operation and/or maintenance and/or use of their motor vehicle.

12.     Katia Loomis was negligent in these non-exclusive ways:

a.      Failure to operate her motor vehicle in a safe and reasonable manner;

b.      Failure to operate her motor vehicle in compliance with state and local traffic laws;

c.      Failure to keep an adequate and proper lookout;

d.      Failure to be aware of their surroundings while operating his motor vehicle;

e.      Failure to avoid collision with the vehicle transporting Plaintiff;

f.      Failure to maintain a safe driving distance; and

        g.     Other acts of negligence to be determined through discovery.

13.    As a direct, foreseeable, and proximate result of Katia Loomis's negligence, Plaintiff suffered bodily injuries and resulting pain and suffering, disability, mental anguish, disfigurement, lost wages and future earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment. The losses are either permanent or continuing and Plaintiff will suffer the expenses and losses in the future.

## COUNT I – UM CLAIM
### DEFENDANT LIBERTY MUTUAL

14.    Plaintiff realleges the allegations set forth above in paragraphs 1-13 as if set forth herein in full, and further alleges:

15.    That Defendant, LIBERTY MUTUAL, issued a policy of automobile insurance to Plaintiff, NANA MENSAH, bearing policy number AOS-258-507897-40, which included coverage against uninsured and/or underinsured motorists. A copy of the insurance policy is attached hereto as Exhibit "A".

16.    At all material times alleged her, said policy was in full force and effect as to the Plaintiff on the date of the accident.

17.    On or about October 15, 2018, Katia Loomis was underinsured and/or uninsured.

18.    That the motor vehicle accident, aforementioned negligence of Katia Loomis, and the subsequent injuries occurring on or about October 15, 2018 was covered by the aforementioned insurance policy.

19.    On or about October 15, 2018, Katia Loomis was negligent and LIBERTY MUTUAL is responsible for Plaintiff's damages via the the above referenced insurance policy.

20.    The aforementioned insurance policy included policy limits of covering $250,000/$500,000.

21.     Plaintiff NANA MENSAH has performed all conditions precedent to enforce the contract of insurance or has been excused or has been prevented from doing so.

22.     As a direct, foreseeable, and proximate result of the aforementioned motor vehicle collision, Plaintiff NANA MENSAH suffered bodily injuries and resulting pain and suffering, disability, mental anguish, disfigurement, lost wages and future earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, and medical and nursing care and treatment. The losses are either permanent or continuing and Plaintiff will suffer the expenses and losses in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendant LIBERTY MUTUAL as follows:

A.     Judgment for damages in an amount to be proven at trial;

B.     For bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, lost wages and future earning capacity, and loss of capacity for the enjoyment of life;

C.     For all medical and incidental expenses according to proof;

D.     For costs of suit incurred in connection with this action;

E.     For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded; and

F.     For any and all such other and further relief as the court may deem just and proper.

## COUNT II –BAD FAITH OF
## DEFENDANT LIBERTY MUTUAL

23.     Plaintiff realleges the allegations set forth above in paragraphs 1-22 as if set forth herein in full and further states:

24.     Defendant LIBERTY MUTUAL is engaged in the business of selling automobile insurance.

25.     Defendant issued a contract of automobile insurance to NANA MENSAH. *See* Exhibit A.

26.     Katia Loomis's insurance policy was insufficient to compensate Plaintiff NANA MENSAH for his injuries.

27.     Katia Loomis's insurance policy has been fully exhausted.

28.     Plaintiff NANA MENSAH notified Defendant LIBERTY MUTUAL that because Katia Loomis was underinsured with policy limits that did not fully compensate Plaintiff NANA MENSAH for his injuries, Plaintiff claimed coverage under NANA MENSAH's uninsured/underinsured coverage with Defendant LIBERTY MUTUAL.

29.     On or about January 21, 2020, Plaintiff made a claim with Defendant LIBERTY MUTUAL on the above referenced automobile insurance policy. *See* Exhibit A.

30.     Defendant LIBERTY MUTUAL intentionally refused and failed to pay Plaintiff's claim under the above referenced automobile insurance policy. *Id.*

31.     Defendant LIBERTY MUTUAL intentionally refused and failed to pay Plaintiff's claim under said policies and denied same without lawful justification.

32.     Defendant LIBERTY MUTUAL's refusal to pay more than $500 on said claims was not based upon any reasonably legitimate, arguable, or debatable reason.

33.     Defendant LIBERTY MUTUAL knew that there was no legitimate, arguable, or debatable reason for denying the claim when Defendant LIBERTY MUTUAL refused to pay said claim.

34.     Defendant LIBERTY MUTUAL intentionally failed to determine whether or not there was any lawful basis for its refusal to pay said claim.

35.     Defendant LIBERTY MUTUAL acted in bad faith in refusing to pay said claim.

36.     Defendant LIBERTY MUTUAL breached the obligation of good faith and fair dealings by engaging in a course of conduct to further its own economic interests and in violation of its contractual and legal obligation to Plaintiff including, but not limited to:

> a.     Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff NANA MENSAH's claim where the obligation to pay the policy limit of only $250,000/$500,000, had become reasonably clear in light of Plaintiff NANA MENSAH's serious injuries; and

> b.     Defendant's intentional refusal to pay Plaintiff NANA MENSAH's claim.

37.     Defendant LIBERTY MUTUAL's breach of its obligation of good faith and fair dealing constitutes the tort of bad faith.

**WHEREFORE**, Plaintiff NANA MENSAH demands judgment against Defendant LIBERTY MUTUAL for compensatory and punitive damages, interest, and costs.

*Continued on Next Page*

## **DEMAND FOR JURY TRIAL**

Plaintiff, NANA MENSAH, demands trial by jury on all issues so triable as a matter of right.

Dated: July 1, 2020

Respectfully submitted,

Tucker Law®

*Attorney for Plaintiff*
200 SE 6TH Street, Suite 405
Fort Lauderdale, FL 33301
Telephone: 954.204.0444
Fax: 954.358.4946
Matt@TuckerUp.com
www.TuckerUp.com

By: /s/ Matthew Sean Tucker
Matthew Sean Tucker
Florida Bar No.: 90047






**CONTACT US**

**By Phone**
Direct:     (407) 391-2161
Toll Free: (800) 225-2467
Ext.       78694
Fax:       (877) 493-6841

**By E-mail**
kelly.vinson@
libertymutual.com

**LM General Insurance Company**
P.O. Box 515097
Los Angeles, CA 90051-5097

**Visit us online**
LibertyMutual.com

January 24, 2020

Tucker Law Firm
5235 16th St N
Saint Petersburg FL 33703-2611

Insured:          Nana Mensah
Claimant:         Nana Mensah Jr.
Claim Number:     LA000-041852768-02
Date of Loss:     10/15/2018
Policy Number:    AOS-258-507897-40

Dear Tucker Law Firm,

Please find the attached Sworn Policy Disclosure Statement and Complete Copy of Policy, with its declarations page and any endorsements.

We will provide an amendment to this statement should facts become known which would alter this information.

Sincerely,
Kelly Vinson
Claims Department

FREEFRM

## Sworn UM Policy Disclosure Statement

1. That Jacqueline Almonte is a Claims Team Manager with LM General Insurance Company. The information provided in this sworn statement was garnered by the undersigned while in the course and scope of her employment from the business records of LM General Insurance Company.

   a. Name of Insurer:  LM General Insurance Company

   b. Name of each Insured:  Nana Mensah & Leah Mensah

   c. Limits of Liability Coverage:
      I. Bodily Injury:       $250,000 each person/$500,000 each accident
      II. Uninsured Motorist: $250,000 each person/$500,000 each accident, non-stacked

   d. Policy or Coverage Defenses: We are still investigating coveage. We have been unable to reach the named insured to discuss the claim.   LM General Insurance Company will supplement this disclosure should new information regarding coverage arise.

   e. A true and correct copy of the policy, with its declarations and any endorsements, is attached to this sworn statement.

2. That LM General Insurance Company has not written an excess liability policy in favor of the subject insured.

3. That LM General Insurance Company has made inquiry of its insured and been advised by that insured that the following amounts to that insured's non-LM General Insurance Company excess liability carrier and purported coverage: None.

The foregoing statements are made under oath and under penalty of perjury and I declare that I have read the following sworn statement and that the facts stated in it are true and correct.

1/29/2020
Date

Jacquelin Almonte
Signature

Jacqueline Almonte – Claims Team Manager

## FORM C

# Florida Uninsured Motorists Insurance



**IMPORTANT NOTICE**

## YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORISTS LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.

Florida law requires that we provide you with Uninsured Motorists Coverage equal to your policy's Bodily Injury Liability limits unless you request lower limits or reject this coverage altogether.

Uninsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles, hit-and-run motor vehicles whose owner cannot be identified, operators whose bodily injury liability insurance or bond limits are less than the amount of bodily injury losses incurred, and owners or operators whose insurance or bond company is insolvent. The damages covered include bodily injury, sickness or disease, or death.

Uninsured Motorists Coverage will also provide benefits for pain, suffering, mental anguish and inconvenience if the disease consists in whole or in part of certain types of permanent injury, including loss of important bodily functions and scarring or disfigurement, and death.

Your Uninsured Motorists Coverage Limits will equal your Bodily Injury Liability Limits unless you select or have selected in writing to reject this coverage entirely or to purchase lower limits. Please indicate your coverage below. Note you cannot select Uninsured Motorists Coverage limits that are greater than your Bodily Injury Liability limits.

**New Florida Customers:**
**If you do not elect any of the options below, your policy will include Uninsured Motorists Coverage limits equal to your Bodily Injury Liability limits.**

**Renewal/Existing Florida Customers:**
**If you previously have purchased or rejected Uninsured Motorists Coverage, your current policy declaration will reflect that choice. That selection will continue to apply to your existing policy and any policy that renews, extends, changes, supersedes or replaces your existing policy. It will only change if you request in writing that it be changed, and you pay the appropriate premium for the changed coverage. However, if you change your Bodily Injury Liability limits, your Uninsured Motorists Coverage limits will equal your revised Bodily Injury Liability limits until you have completed a new election form.**

---

☐ I reject Uninsured Motorists Coverage entirely.

☒ I select Uninsured Motorists Coverage limits equal to my Bodily Injury Liability limits. (If you select this option, disregard the bold statement on the top of this page unless you elect the non-stacked option on page 2 of this form.)

☐ I select the limit of Uninsured Motorists Coverage checked below, which is lower than my Bodily Injury Liability limit:

| | | | |
|---|---|---|---|
| ☐ $10,000/20,000 | ☐ $30,000/30,000 | ☐ $50,000/100,000 | ☐ $250,000/500,000 |
| ☐ $25,000/25,000 | ☐ $35,000/35,000 | ☐ $100,000/100,000 | ☐ $300,000/300,000 |
| ☐ $25,000/50,000 | ☐ $50,000/50,000 | ☐ $100,000/300,000 | ☐ $500,000/500,000 |
| | | | ☐ $1,000,000/1,000,000 |

Also, please understand your Uninsured Motorists Coverage election applies to your liability insurance policy and any future policy that renews, extends, changes, supersedes or replaces an existing policy issued at the same Bodily Injury Liability limits. If you decide to elect a different alternative at some future time, you must let the Company know in writing.

LM General Insurance Company




## FORM C

### ELECTION OF STACKED OR NON-STACKED COVERAGE



**(Do not complete if you have rejected Uninsured Motorists.)**

You have the option to purchase either Stacked or Non-Stacked Uninsured Motorists Coverage. If you choose Stacked Coverage, the Uninsured Motorists Coverage Limits on motor vehicles you insure under this policy will be added together ("stacked") for all covered injuries to increase the total Uninsured Motorists Coverage Limits available to an injured insured. As an alternative to Stacked Uninsured Motorists Coverage without the limitations described below, you may purchase Non-Stacked Uninsured Motorists Coverage at a reduced rate, subject to the limitations that follow.

If you select Non-Stacked Uninsured Motorists Coverage, then your Uninsured Motorists Coverage Limits on the vehicle you insure will not be added together to increase the limit of Uninsured Motorists Coverage available to any injured person for any one accident. If at the time of the accident the injured person is occupying a motor vehicle, the Uninsured Motorists Coverage available to him or her is the coverage available as to that motor vehicle. If you or your resident family member are occupying a vehicle not owned by you or a family member residing in your household, the injured insured will be entitled to the highest limit of Uninsured Motorists Coverage afforded to any one vehicle as to which the injured insured is a named insured or family member. Such coverage shall be excess over the coverage on the vehicle the injured person is occupying. If at the time of the accident the injured person is not occupying a motor vehicle, he or she is entitled to select any one limit of Uninsured Motorists Coverage for any one vehicle afforded by a policy under which he or she is insured as a named insured or as an insured resident of the named insured's household.

The Non-Stacked Uninsured Motorists Coverage provided by the policy does not apply to the named insured or family members residing in his or her household who are injured while occupying any vehicle owned by such insureds for which Uninsured Motorists Coverage was not purchased.

**New Florida Customers: If you have purchased Uninsured Motorists Coverage but do not elect either Stacked or Non-Stacked Coverage, your policy will include Stacked Uninsured Motorists Coverage.**

**Renewal/Existing Florida Customers: If you have purchased Uninsured Motorists Coverage, your current policy declaration will reflect either Stacked or Non-Stacked Coverage. That selection will continue to apply to your existing policy and any policy that renews, extends, changes, supersedes or replaces your existing policy. It will only change if you request in writing that it be changed, and you pay the appropriate premium for the changed coverage. Even if you change your Bodily Injury Liability limits, your previous selection of Stacked or Non-Stacked Coverage will not change until you have completed a new election form.**

☒ I hereby elect the Non-Stacked form of Uninsured Motorists Coverage.

☐ I hereby elect the Stacked form of Uninsured Motorists Coverage. (If you select this option, please disregard the bold statement at the top of page 1 of this form, unless you selected Uninsured Motorists Coverage limits less than your Bodily Injury Liability limits.)

I understand and agree that if I select stacked or non-stacked coverage, this selection applies to any policy that renews, extends, changes, supersedes or replaces an existing policy. It will only change if I request that it be changed, and I pay the appropriate premium for the changed coverage.

**NAME AND ADDRESS:** Nana Mensah
Leah P Mensah
3725 S Ocean Dr 1217
Hollywood FL 33019-2912

e-Signed by Nana Mensah
on 2016-11-11 12:34:53 GMT

_____      _____
Signature of Named Insured          Date

LM General Insurance Company

Form #          Nana Mensah
AUTO 4181 07 11   Leah Mensah

**Policy Number: AOS-258-507897-40 3**
**Policy effective from: 11/03/2016 - 11/03/2017**      Page 2 of 2



**Questions about your Policy?**
Call 1-954-771-2155 or
1-800-630-3265

**Policy Number:**
AOS-258-507897-40 7  3

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims



**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

# Auto Policy Declarations
## LM General Insurance Company
## Total Annual Premium: $1,551.00

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

### Insurance Information

| Named Insured: | Nana Mensah<br>Leah P Mensah | Policy Number: | AOS-258-507897-40 7  3 |
|---|---|---|---|
| Mailing Address: | 3725 S Ocean Dr 1217<br>Hollywood FL 33019-2912 | Policy Period: | 11/03/2017-11/03/2018 12:01 a.m. standard time at the address of the Named Insured |
| | | Declarations Effective: | 11/03/2017 |
| | | Affinity Affiliation: | UCLA Alumni Association |

### Vehicles Covered by Your Auto Policy

| | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2013 | LEXUS | LS 460 | JTHBL5EFXD5122656 |

### Driver Information

| | NAME | STATE | | NAME | STATE |
|---|---|---|---|---|---|
| 1 | Nana Mensah | FL | 2 | Leah P Mensah | FL |

To ensure proper coverage, please contact us to add drivers not listed above.

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your Total Annual  Policy Premium.

**Vehicle Discounts**

| | VEH 1<br>2013<br>LEXUS<br>LS 460 |
|---|---|
| Anti-Theft Device Discount | • |
| Vehicle Safety Discount | • |



**Want to Add a Coverage?**
Call 1-954-771-2155 or
1-800-630-3265 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
AOS-258-507897-40 7  3

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims



## DISCOUNTS AND BENEFITS SECTION continued

### Policy Discounts

• Early Shopper Discount        /    • Paperless Policy Discount        • Electronic Funds Transfer (EFT) /
                                                                          Recurring Credit Card (RCC)
                                                                          Discount

• Multi-Policy Discount               • Multi-Car Discount

### Policy Benefits

**Accident Forgiveness:** Congratulations!  Your Policy has earned Accident Forgiveness!  If an experienced driver on your policy has an  accident, we won't raise your price due to the first  accident.

# Coverage Information

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. **Where no premium is shown, you have not purchased the indicated coverage for that vehicle.**

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE |
|---|---|---|---|
| | | | **VEH 1**<br>**2013**<br>**LEXUS**<br>**LS 460** |
| **A. Liability** | | | |
| Bodily Injury | $ | 250,000 Each Person | $350 |
| | $ | 500,000 Each Accident | |
| Property Damage | $ | 100,000 Each Accident | $133 |
| **C. Uninsured Motorists** | | | |
| Uninsured Motorists | $ | 250,000 Each Person | $158 |
| Bodily Injury | $ | 500,000 Each Accident | |
| **D. Coverage for Damage to Your Auto** | | | |
| **Collision** | | | $442 |
| Actual Cash Value Less<br>Deductible Shown<br>Veh 1 $1000 | | | |
| **Other Than Collision** | | | $183 |
| Actual Cash Value Less<br>Deductible Shown<br>Veh 1 $500 | | | |

 **Want to Add a Coverage?**
Call 1-954-771-2155 or
1-800-630-3265 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
AOS-258-507897-40 7 3

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims



## Coverage Information continued

| COVERAGE | LIMITS | PREMIUM PER VEHICLE |
|---|---|---|
| | | VEH 1<br>2013<br>LEXUS<br>LS 460 |
| **Personal Injury Protection (PIP)** | | |
| Personal Injury Protection (PIP)<br>$500 Deductible Applies To Named Insured | | $263 |
| **Optional Coverages** | | |
| Towing And Labor Cost Each Disablement<br>Veh 1 $50 | | $4 |
| Transportation Expenses | $30 Per Day<br>$900 Per Accident | $18 |

| **Annual Premium Per Vehicle:** | **$1,551** |
|---|---|

**Total Annual Policy Premium:** $1,551.00

#### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- **Better Car Replacement™:** Totaling your car hurts. We'll make it feel a little better. If your car is totaled, we'll give you the money for a car that's one model year newer with 15,000 fewer miles on it.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

#### Additional Information for Vehicles Covered by Your Policy

| Loss Payee(s) | Month/Year Expires |
|---|---|
| VEH 1: SPACE COAST CREDIT UNION | 11/2022 |

Alternate Garaging Address
VEH 1: Hollywood, FL, 33019-2912

#### Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy.

Automobile Amendatory Endorsement AS3743 03 16

Personal Injury Protection Coverage AS2090 01 13

Uninsured Motorist Coverage - Non-Stacked AS2125 03 16

Optional Transportation Expenses Coverage AS2225 06 05



**Questions about your Policy?**
Call 1-954-771-2155 or
1-800-630-3265

**Policy Number:**
AOS-258-507897-40 7  3

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims



**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy. *(continued)*

Split Liability Limits PP 03 09 04 86

Full Windshield Coverage PP 03 25 08 86

Automatic Termination Endorsement AS1046 02 05
Towing and Labor Coverage AS2208FL 03 16

Coverage For Damage To Your Auto Exclusion
Endorsement PP 13 01 12 99
Liability Coverage Exclusion Endorsement
PP 03 26 06 94
Loss Payable Clause PP 03 05 08 86

**Special State Provisions**

For personal injury protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earnings capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction will result from these elections. The named insured is hereby advised not to elect the lost wages exclusion if the named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

LibertyGuard Auto Policy Declarations provided and underwritten by LM General Insurance Company (a stock insurance company), Boston, MA.

President

Secretary

This policy, including endorsements listed above,
is countersigned by:

Authorized Representative

AUTO 3079 05 16

**Important Billing Information Enclosed**



# LM General Insurance Company

## LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

To serve you **best**...

Liberty Mutual has over 300 offices throughout the United States. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your **bill**.

THIS POLICY IS NONASSESSABLE

Liberty Mutual Insurance Group

AUTO 4236

**LIBERTYGUARD** AUTO POLICY

QUICK REFERENCE
DECLARATIONS PAGE
Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance



|  | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |
| **PART A - LIABILITY COVERAGE** | |
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 3 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |
| **PART B - MEDICAL PAYMENTS COVERAGE** | |
| Insuring Agreement | 4 |
| Exclusions | 4 |
| Limit of Liability | 4 |
| Other Insurance | 5 |
| **PART C - UNINSURED MOTORISTS COVERAGE** | |
| Insuring Agreement | 5 |
| Exclusions | 5 |
| Limit of Liability | 6 |
| Other Insurance | 6 |
| Arbitration | 6 |
| **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO** | |
| Insuring Agreement | 7 |
| Transportation Expenses | 7 |
| Exclusions | 8 |
| Limit of Liability | 9 |
| Payment of Loss | 9 |
| No Benefit to Bailee | 9 |
| Other Sources of Recovery | 9 |
| Appraisal | 9 |
| **PART E - DUTIES AFTER AN ACCIDENT OR LOSS** | 10 |
| **PART F - GENERAL PROVISIONS** | |
| Bankruptcy | 10 |
| Changes | 10 |
| Fraud | 10 |
| Legal Action Against Us | 10 |
| Our Right To Recover Payment | 11 |
| Policy Period And Territory | 11 |
| Termination | 11 |
| Transfer Of Your Interest In This Policy | 12 |
| Two Or More Auto Policies | 12 |
| *****MUTUAL POLICY CONDITIONS** | 12 |

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and **"your"** refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

B. **"We,"** "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to **that** person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. **"Occupying"** means in, upon, getting in, on, out or **off.**

H. "Property damage" means physical injury **to,** destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van **that:**

(1) has a Gross Vehicle Weight of less than **10,000** lbs.; and

(2) is not used for the delivery or transportation of goods and materials unless such use is:

(a) incidental to your "business" **of** installing, maintaining or repairing furnishings or equipment; or

(b) for farming or ranching.

This provision (J.2.) applies only **if:**

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle **it** replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition **to** any shown in the Declarations, it **will** have the broadest coverage we **now** provide for any vehicle shown in the Declarations.

3. Any **"trailer"** you **own.**

4. Any auto or **"trailer"** you do not **own** while used as a temporary substitute **for** any other vehicle described in **this** definition which is out of normal use because of **its:**

a. breakdown;     d. loss; or
b. repair;     e. destruction.
c. servicing;

This provision (J.4.) does not apply **to** Coverage for Damage to Your **Auto.**



## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of

attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that "insured."

3. For "property damage" to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   that "insured."

   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. selling;          d. storing; or

   b. repairing;     e. parking;

   c. servicing;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. you;

   b. any "family member;" or

   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in exclusion A.6.

   This exclusion (A.7.) does not apply to



the maintenance or use of a:

a. Private passenger auto;

b. Pickup or van that:

  (1) You own; or

  (2) You do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

    a. breakdown;    d. loss; or
    b. repair;       e. destruction; or
    c. servicing;

c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

9. For "bodily injury" or "property damage" for which that "insured:"

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (B.1.) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency; or

b. To any "trailer."

2. Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or

"occupying" any vehicle which is:

a. owned by a "family member;" or

b. furnished or available for the regular use of a "family member."

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest, resulting from the "insureds" use.

### LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

### OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.



**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

# PART B - MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member:"

   a. while "occupying;" or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any "insured" for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by any "family member;" or

   b. furnished or available for the regular use of any "family member."

   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. discharge of a nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    a. competing in; or

    b. practicing or preparing for;

    any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"



2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

a. you or any "family member;"

b. a vehicle which you or any "family member" are "occupying;" or

c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. denies coverage: or

b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying," or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured:"

1. If that "insured" or the legal



representative settles the "bodily injury" claim without our consent.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest

applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured;"

from the owner or operator of an "uninsured motor vehicle," then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the



minimum limit for bodily injury **liability** specified by the financial responsibility **law** of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the **right**

to a trial. This demand must be made **within** 60 days of the arbitrators' decision. If **this** demand is not made, the amount **of** damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss **to** "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one **"your** covered auto" or "non-owned auto" results from the same **"collision,"** only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused **by:**

1. Other than **"collision"** only if the Declarations indicate that Other Than Collision Coverage is provided for **that** auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provide d for that auto.

If there is a loss to a "non-owned auto," **we** will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of **"your** covered auto" or a "non-owned auto" or their impact with another vehicle or **object.**

Loss caused by the following is considered other than **"collision:"**

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earth-quake;
5. Windstorm;
6. Hail. Water or flo od;
7. Malicious mischief or vandalism
8. Riot or civil commo-tion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a **"collision,"** you may elect to have **it** considered a loss caused by **"collision."**

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or **"trailer"** not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or **"trailer"** you do not **own** while used as a temporary substitute **for** "your covered auto" which is out **of**

normal use because of **its:**

a. breakdown;
b. repair;
c. servicing;
d. loss; or
e. destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay, **without** application **of** a deductible, up to $15 per day, to a maximum of $450, **for:**

1. Temporary transportation expenses incurred by you in the event of a loss **to** "your covered auto." We will pay **for** such expenses if the loss is caused **by:**

a. Other than **"collision"** only if the Declarations indicate that Other Than Collision Coverage is provided for **that** auto.

b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto." We will pay for loss of use expenses if the loss is caused **by:**

a. Other than **"collision"** only if the Delcarations indicate that Other Than Collision Coverage is provided for any "your covered **auto."**

b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered **auto."**

If the loss is caused by a total theft of **"your** covered auto" or a "non-owned auto," **we** will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

If the loss is caused by other than theft of a "your covered auto" or a "non-owned **auto,"** we will pay only expenses beginning when the auto is **withdrawn** from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned **auto."**



## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical or electrical breakdown or failure; or
   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:
   a. radioactive contamination;
   b. discharge of any nuclear weapon (even if accidental);
   c. war (declared or undeclared);
   d. civil war;
   e. insurrection: or
   f. rebellion or revolution.

4. Loss to:
   a. Any electronic equipment designed for the reproduction of sound, including, but not limited to:
      (1) radios and stereos;
      (2) tape decks; or
      (3) compact disc players;
   b. Any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:
      (1) citizens band radios;
      (2) telephones;
      (3) two-way mobile radios;
      (4) scanning monitor receivers;
      (5) television monitor receivers;
      (6) video cassette recorders;
      (7) audio cassette recorders; or
      (8) personal computers;
   c. tapes, records, discs, or other media used with equipment described in a. or b.; or
   d. any other accessories used with equipment described in a. or b.

   This exclusion (4.) does not apply to:
   a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:
      (1) The equipment is permanently installed in "your covered auto" or any "non-owned auto;" or
      (2) The equipment is:
         (a) Removable from a housing unit which is permanently installed in the auto;
         (b) Designed to be solely operated by use of the power from the auto's electrical system; and
         (c) In or upon "your covered auto" or any "non-owned auto;"
         at the time of the loss.
   b. any other electronic equipment that is:
      (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or
      (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:
   a. acquire during the policy period; and
   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:
   a. awnings or cabanas; or
   b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar or laser.



10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    a. special carpeting and insulation, furniture or bars;

    b. facilities for cooking and sleeping;

    c. height-extending roofs; or

    d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

    a. selling;    d. storing; or

    b. repairing;    e. parking;

    c. servicing;

    vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. Loss to "your covered auto" or any "non-owned auto," located inside a facility designed for racing, for the purpose of:

    a. competing in; or

    b. practicing or preparing for;

    any prearranged or organized racing or speed contest, resulting from the "insureds" use.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

    a. you; or

    b. any "family member;"

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member," pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

    1. Actual cash value of the stolen or damaged property;

    2. Amount necessary to repair or replace the property with other property of like kind

and quality.

    However, the most we will pay for loss to any "non-owned auto" which is a trailer is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

    1. You; or

    2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

    1. Any coverage provided by the owner of the "non-owned auto;"

    2. Any other applicable physical damage insurance;

    3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may request an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:



1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:
   a. to physical exams by physicians we select. We will pay for these exams.
   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:
   a. medical reports; and

b. other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also.

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium

adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all



the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. at least 10 days notice:

(1) if cancellation is for nonpayment of premium; or

(2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

a. for nonpayment of premium; or

b. if your driver's license or that of:

(1) any driver who lives with you; or

(2) any driver who customarily uses "your covered auto;"

has been suspended or revoked. This must have occurred:

(1) during the policy period; or

(2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

c. if the policy was obtained through material misrepresentation.

B. Nonrenewal. If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

C. Automatic Termination. If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your cove-red auto," any similar insurance provided by



this policy will terminate as to that auto on the effective date of the other insurance.

D. Other Termination Provisions.
1. We may deliver any notice instead **of** mailing it. Proof of mailing of any notice shall be sufficient proof of **notice.**
2. If this policy is cancelled, you may be entitled to a premium refund. If so, **we** will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.
3. The effective date of cancellation stated in the notice shall become the end of the policy period.

### TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned **without** our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided **for:**

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and
2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only **with** respect to the representative's legal responsibility to maintain or use **"your** covered **auto."**

B. Coverage will only be provided until the end of the policy period.

### TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our **liability** under all the policies shall not exceed the highest applicable limit of liability under any one **policy.**

### *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

PRESIDENT

SECRETARY

Includes Copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994



## AUTOMOBILE AMENDATORY ENDORSEMENT - FLORIDA

AS 3743 03 16

### I. DEFINITIONS

The **Definitions** section is revised as follows:

**A.** The definition of "Your Covered Auto" is replaced with the following:

"Your covered auto" means:

1. Any vehicle shown in the Declarations.
2. A "newly acquired auto".
3. Any "trailer" you own.
4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

This provision (**4.**) does not apply to Coverage For Damage To Your Auto.

**B.** The definition of "Newly Acquired Auto" is added as follows:

"Newly acquired auto":

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:
   a. A private passenger auto; or
   b. A pickup or van, for which no other insurance policy provides coverage, that:
      (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and
      (2) Is not used for the delivery or transportation of goods and materials unless such use is:
         (a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or
         (b) For farming or ranching.

   For this definition to apply to a "newly acquired auto", which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage

we provide for a "newly acquired auto" will begin at the time you request the coverage.

   a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

   However, for this coverage to apply to a "newly acquired auto" that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

   If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

   b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

      (1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

      (2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, a Collision deductible of $500 will apply.

   c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

      (1) 30 days after you become

Page 1 of 12

**Liberty Mutual.** INSURANCE

the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

C. The definition of "Emergency medical condition" is added as follows:

1. "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
   a. Serious jeopardy to patient health.
   b. Serious impairment to bodily functions.
   c. Serious dysfunction of any bodily organ or part.

D. The definition of "Personal vehicle sharing program" is added as follows:
"Personal vehicle sharing program" means a legal entity, qualified to do "business" in this state and engaged in the "business" of facilitating the sharing of private passenger motor vehicles for noncommercial use by individuals within this state, which includes a written agreement between the individual and legal entity advising of the terms of use.

E. The definition of "Transportation network" platform is added as follows: "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

II. **PART A - LIABILITY COVERAGE**

A. Item B.2. of the Insuring Agreement is deleted and replaced by the following:

2. Any person using "your covered auto" with your express or implied permission.

B. Exclusion A.5. is deleted and replaced by the following:

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person for compensation in connection with a commercial ridesharing program, whether or not a passenger is "occupying" the vehicle. This exclusion (A.5) does not apply to a share-the-expense car pool.

C. Exclusion A.10. is added as follows:

10. For "bodily injury" or "property damage" arising out of a criminal act or omission of an "insured". This exclusion only applies to the "insured" whose criminal act or omission causes the "bodily injury" or "property damage" and will not be based solely on an arrest or the issuance of a citation. In addition, this exclusion applies only to the portion of damages that are in excess of the minimum limits of liability coverage required by the Financial Responsibility Law of Florida. However, this exclusion (10.) does not apply to traffic violations.

D. Exclusion B.4. is deleted and replaced by the following:

4. Any vehicle operated by an "insured" while it is:
   a. Located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:
      (1) Race activity; or
      (2) Speed, performance, stunt, or demolition contest or exhibition; or
   b. Participating in a high performance driving or racing instruction course or school.
   This exclusion does not apply to an



AS 3743 03 16

organized and controlled event that is not a speed, performance, stunt or demolition event.

**E.** Exclusion **B.5.** is added as follows:

    **5.** "Your covered auto" while it is:

        **a.** Enrolled in a "personal vehicle sharing program" under the terms of a written agreement; or

        **b.** Being used in connection with such "personal vehicle sharing program" by anyone other than you or any "family member".

However, this exclusion applies only to the extent that the limits of liability for this coverage exceed the minimum limits of liability required by the financial responsibility law of Florida.

The **Other Insurance** section is deleted and replaced by the following:

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto" shall be excess over any other collectible insurance.

However, we will provide primary insurance for a vehicle you do not own if:

**1.** The vehicle is leased by you under a written rental or lease agreement; and

**2.** The face of the rental or lease agreement contains, in at least 10-point type, the following language:

The valid and collectible liability insurance of any authorized rental or leasing driver is primary for the limits of liability coverage required by FLA. STAT. SECTIONS 324.021(7) and 627.736, Florida Statutes, (F.S).

**III. PART B - MEDICAL PAYMENTS COVERAGE**

Part B. is amended as follows:

**A.** Item **A.** of the **Insuring Agreement** is deleted and replaced by the following:

    **A.** We will pay usual and customary charges incurred for necessary medical and funeral services because of "bodily injury":

        **1.** Caused by accident; and

        **2.** Sustained by an "insured."

    Medical Payments Coverage does not cover:

        **1.** Massage, regardless of the person, entity or licensee providing massage, and a licensed massage therapist may not be reimbursed for medical benefits.

        **2.** Acupuncture, regardless of the person, entity or licensee providing acupuncture, and a licensed acupuncturist may not be reimbursed for medical benefits.

    We will pay only those expenses:

        **1.** Incurred for services rendered within three (3) years from the date of the accident; and

        **2.** The initial services and care were received within 14 days after the motor vehicle accident.

    We have the right to review medical expenses and services to determine if they are reasonable and necessary for the "bodily injury" sustained.

**B.** Paragraph **B.** of the **Insuring Agreement** of **Part B** is deleted and replaced by the following:

    **B.** "Insured" as used in this Part means:

        **1.** You or any "family member:"

            **a.** while "occupying;" or

            **b.** as a pedestrian when struck by;

    a motor vehicle designed for use mainly on public roads or a trailer of any type.

**C.** Item **B.2.** of the **Insuring Agreement** is deleted and replaced by the following:

    **2.** Any other person while occupying your covered auto with your express or implied permission.

    **3.** Any other person while occupying, as a guest, an automobile not owned by you or a family member, while being operated by you or a family member.

**D.** Exclusion **2.** is deleted and replaced by the following:

    **2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person for compensation in connection with a commercial ridesharing program, whether or not a passenger is "occupying" the vehicle. This exclusion (2.) does not apply to a share-the-expense car pool.

**E.** Exclusion **11.** is deleted and replaced by

**Liberty Mutual.**
INSURANCE

AS 3743 03 16

the following:

11. Sustained while "occupying" any vehicle operated by the "insured" while it is:

   a. located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

     (1) race activity; or

     (2) speed, performance, stunt, or demolition contest or exhibition; or

   b. participating in a high performance driving or racing instruction course or school.

This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

**F.** Exclusion **12.** is added as follows:

12. Under Medical Payments benefits:

   a. massage, regardless of the person, entity or licensee providing massage, and a licensed massage therapist may not be reimbursed for medical benefits.

   b. acupuncture, regardless of the person, entity or licensee providing acupuncture, and a licensed acupuncturist may not be reimbursed for medical benefits.

**G.** Exclusion **13.** is added as follows:

13. Sustained while occupying, or when struck by, "your covered auto" while it is:

   a. enrolled in a "personal vehicle sharing program" under the terms of a written agreement; or

   b. being used in connection with such "personal vehicle sharing program" by anyone other than you or any "family member".

**H.** Exclusion **14.** is added as follows:

14. Arising out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime.

This exclusion only applies to the "insured" whose criminal act or omission causes the "bodily injury" or "property damage" and will not be based solely on an arrest or the

issuance of a citation." However, this exclusion **14.** does not apply to traffic violations.

**I.** Paragraph **A.** of the **Limit of Liability** is deleted and replaced by the following:

  **A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

    **1.** "Insureds;"

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the accident

The maximum limit of liability for the total of all medical payment benefits shown in the Schedule or Declarations is the total aggregate limit for medical payment benefits available, to or for each "insured" injured in any one accident, from all sources combined, including this policy, if the insured receives initial services and care within 14 days after the motor vehicle accident.

**J.** Paragraphs **C., D. and E.** of the **Limit of Liability** are added as follows:

  **C.** No one will be entitled to receive supplemental payment under Medical Payments Coverage for claims in excess of Personal Injury Protection Coverage limits if they did not sustain an 'Emergency medical condition'.

  **D.** Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

  **E.** Any amounts payable under this coverage shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law.

We will limit reimbursement of medical expenses to a properly billed reasonable charge, but in no event will we pay more than the following schedule of maximum charges:

    **1.** For emergency transport and treatment by providers licensed



AS 3743 03 16

under Chapter 401, Florida Statutes, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under

   a. The participating physicians fee schedule of Medicare Part B, except as provided in sub-subparagraphs b. and c.

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule in effect from March 1st of the year in which services, supplies or care is rendered, until March 1st of the following year, and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

K. The Other Insurance section is deleted and replaced by the following:
   **OTHER INSURANCE**
   If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

   Medical Payments Coverage under this policy shall be excess over "medical benefits" of all Personal Injury Protection Coverage available from all sources.

IV. **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

A. Paragraph A. is deleted and replaced by the following:
   **INSURING AGREEMENT**
   A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, subject to "Customized Equipment Coverage", minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest



applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto" we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under **Part D**:

**CUSTOMIZED EQUIPMENT COVERAGE**

A. We will pay up to $500 for theft or damage to "customized equipment" if the loss is caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a "non-owned auto" keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for "your covered auto" or any "non-owned auto".

B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;

2. are removable from a housing unit that is permanently installed inside the auto;

3. are permanently bonded to the vehicle by an adhesive or welding procedure; or

4. change the appearance or performance of the vehicle including but not limited to any additions or alterations to the chassis engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered "customized equipment". This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered "customized equipment".

C. If you have purchased additional coverage for "customized equipment" we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

D. The most we will pay for parts, equipment and accessories that are:

a. not installed by the auto manufacturer or dealer and

b. permanently installed in or upon the auto is the actual cash value of the vehicle not including such parts, equipment and accessories.

C. The **Transportation Expenses** provision of **Part D** is deleted and replaced by the following:

**TRANSPORTATION EXPENSES**

In addition, we will pay up to $15 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies in the event of a loss to your covered auto if the loss is caused by:



a. Other than "collision" only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If the loss is caused by a total theft of your covered auto, we will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when your covered auto is returned to use or we pay for its loss.

D. Exclusion 1. is deleted and replaced by the following:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used for compensation in connection with a commercial ridesharing program, whether or not a passenger is "occupying" the vehicle. This exclusion (1.) does not apply to a share-the-expense car pool.

E. Exclusion 4. is deleted and replaced by the following:

4. We will not pay for loss to equipment that is not permanently installed in or upon "your covered auto" or any "non-owned auto". This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

a. radios and stereos;

b. tape decks;

c. compact disc players and burners;

d. digital video disc (DVD) players and burners;

e. citizens band radios;

f. scanning monitor receivers;

g. television monitor receivers;

h. global positioning system (GPS) receivers and/or components;

i. video cassette players and recorders;

j. audio cassette recorders; or

k. personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

F. Exclusion 13. is deleted and replaced by the following:

13. Loss to "your covered auto" or any "non-owned auto" operated by an "insured" while it is:

a. located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

(1) race activity; or

(2) speed, performance, stunt, or demolition contest or exhibition; or

b. participating in a high performance driving or racing instruction course or school.

This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

G. Exclusion 15. is added as follows:

15. We will not pay for loss to customized equipment in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

H. Exclusion 16. is added as follows:

16. We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

I. Exclusions 17. and 18. are added as follows:

17. Loss to "your covered auto" or any "non-owned auto" which arises out of a criminal act or omission of an "insured." This exclusion only applies to the "insured" whose criminal act or omission causes the "bodily injury" or "property damage" and will not be based solely on an arrest or the issuance of a citation." However, this exclusion (17.) does not apply to traffic violations.

18. Loss to "your covered auto" or "non-owned auto" while being used in a "personal vehicle sharing program." This exclusion only

Liberty
Mutual.
INSURANCE

AS 3743 03 16

applies when "your covered auto" or any non-owned auto is being used by someone other than "you" or a "family member" in connection with a "personal vehicle sharing program". In addition, loss to or loss of use of a non-owned auto is only excluded when the provisions of the "personal vehicle sharing program" preclude the recovery of such loss of use from "you" or that "family member".

**J.** Paragraph **B** of the **Limit of Liability** provision of **Part D** is added as follows:

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any "customized equipment".

**K.** Item **A.** of the **Limit of Liability** provision is deleted and replaced by the following:

**A.** At our option, our limit of liability for loss will be the lowest of:

1. The actual cash value of the stolen or damaged property;

2. a. The amount necessary to repair or replace the property with other property of like kind and quality;

 b. Determination of the cost of repair or replacement will be based upon one of the following:

 (1) the cost of repair or replacement agreed upon by you and us;

 (2) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

3. The limit of liability shown in the

**L.** The **Appraisal** provision of Part **D** is deleted and replaced by the following:
**APPRAISAL**

**A.** If we and you do not agree on the amount of loss, either may request an appraisal of the loss, however both parties must agree to the appraisal. Upon notice of a request for appraisal, the opposing party may, prior to appraisal, request mediation of the dispute in accordance with the Mediation provision contained in Part **F** of the policy. The mediation must be completed before a request for appraisal can be made.

**B.** In the event of a request for appraisal, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire.

A decision agreed to by any two will be binding.

Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

**C.** We do not waive any of our rights under this policy by agreeing to an appraisal.

**V. PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

Part E is amended as follows:

**A.** Paragraph **B.** of **Part E** is deleted and replaced by the following:

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy, recorded interviews at a reasonable location, while not in the presence of any other person or establishment making a claim or claiming benefits. This is not intended to prevent the presence of the insured's or claimants personal representative. The recorded interview may be recorded by audio, video, court reporter or any combination thereof; however, medical examinations are not



AS 3743 03 16

subject to recorded interviews.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. To physical and mental exams by physicians we select under terms we require. We will pay for these exams. If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent medical payments benefits.

   b. To interviews and recorded statements without the need for us to conduct an examination under oath. The recorded interview may be recorded by audio, video, court reporter or any combination thereof; however, medical examinations are not subject to recorded interviews.

   c. To examination under oath and subscribe to the same. The examination under oath may be recorded by audio, video, court reporter or any combination thereof; however, medical examinations are not subject to audio or video recording.

4. Authorize us to obtain:

   a. Medical reports; and

   b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle, except data recorded by a Global Positioning System (GPS).

5. Submit a proof of loss when required by us.

## VI. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. Items **A.** and **B.** of the Changes provision are deleted and replaced by the following:

   A. This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

   B. The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

   1. The number, type or use classification of insured vehicles;

   2. Operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses.

   3. The location where your vehicle is principally garaged.

   4. Customized equipment or parts.

   5. The persons who regularly operate a covered auto.

   You also agree to disclose all licensed drivers residing in your household.

B. The **Fraud** provision is deleted and replaced by the following:

   FRAUD

   This policy was issued in reliance upon the information provided on your application. Any changes we make at your request to this policy after inception will be made in reliance upon information you provide. We may void this policy if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made, at the time changes were requested, or any time during the policy period.

   We may void this policy or deny coverage for an accident or loss if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

C. The **Termination** provision is deleted and replaced by the following:

   TERMINATION



AS 3743 03 16

**A. Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:
   a. Returning this policy to us; or
   b. Giving us advance written notice of the date cancellation is to take effect.

2. The named insured:
   a. May not cancel this policy, if this policy provides Personal Injury Protection coverage, or Property Damage Liability coverage, or both during the first 60 days immediately following the date of issuance or renewal unless:
      (1) "Your covered auto" has been totally destroyed so that it is no longer operable on the roads of Florida; or
      (2) The named insured transfers ownership of "your covered auto"; or
      (3) The named insured obtains other insurance on "your covered auto"; or
      (4) The named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.
   b. May cancel for any reason after this policy is in effect for 60 days.

3. When this policy has been in effect for less than 60 days, we may cancel for any reason, except we may not cancel:
   a. for nonpayment of premium, during the first 60 days following the date of issuance. However, we may cancel if a check used to pay us is dishonored for any reason, or for any other type of premium payment that was subsequently determined to be rejected or invalid.
   b. based on the lawful use, possession, or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

4. After this policy is in effect for 60 days, we will cancel only:
   a. For nonpayment of premium; or
   b. If your driver's license or that of:
      (1) Any driver who lives with you; or
      (2) Any driver who customarily uses "your covered auto";
      has been suspended or revoked. This must have occurred during:
      (1) The policy period; or
      (2) The 180 days immediately preceding the original effective date of the policy; or
   c. For material misrepresentation or fraud by you with respect to any material fact in obtaining, changing, renewing this policy or with submitting any claim.

5. Except as provided in SECTION 6, we may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the named insured shown in the Declarations at the address shown in the policy:
   a. At least 10 days notice if cancellation is for nonpayment of premium; or
   b. At least 45 days notice in all other cases.

6. In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of any additional premium due us. If within 15 days of the notice of additional premium due (or a longer time period as specified in the notice), you fail to either:
   a. Pay the additional premium and maintain this policy in full force under its original terms; or
   b. Cancel this policy and



AS 3743 03 16

demand a refund of any unearned premium;

then this policy shall be cancelled effective 15 days from the date of the notice (or a longer time period as specified in the notice).

## NONRENEWAL

If we decide not to renew or continue this policy we will mail advance notice to the named insured shown in the Declarations at the address shown in this policy at least 45 days before the end of the policy period. Notice will be mailed by registered or certified mail or United States Post Office proof of mailing.

If the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

We will not refuse to renew or continue this policy solely because:

1. You were convicted of one or more traffic violations which did not involve an accident or cause revocation or suspension of your driving privilege unless you have been convicted of, or plead guilty to:

   a. Two such traffic violations within an 18 month period;

   b. Three or more such traffic violations within a 36 month period; or

   c. Exceeding the lawful speed limit by more than 15 miles per hour; or

2. You have had an accident. However, we may refuse to renew or continue this policy if, at the time of nonrenewal, you have had two or more at-fault accidents, or three or more accidents regardless of fault, within the current 3-year period.

## AUTOMATIC TERMINATION

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

## OTHER TERMINATION PROVISIONS

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

4. Computed premium will be refunded within 30 days after the effective date of the policy cancellation should the insured cancel their policy. If the insurer initiates cancellation returned premium will be sent within 15 days after the effective date of the policy cancellation.

B. The following provision is added:

   ### MEDIATION

   In any claim filed with us for:

   1. Loss resulting from "bodily injury" in an amount of $10,000 or less;

   2. "Property damage"; or

   3. Loss to "your covered auto" or any "non-owned auto";

   either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Financial Services on a form which may be obtained from the Department. The request must state:

   1. Why mediation is being requested; and

   2. The issues in dispute which are to be mediated.

   Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating



AS 3743 03 16

to the same facts already mediated. The Department shall randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation. The conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participates must:

1. Have authority to make a binding decision; and
2. Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

**SUNSET PROVISION**

In the event that Florida's personal injury protection (PIP) coverage is no longer in effect or deemed non-mandatory by law, statute, or rule, we reserve the right to modify your rates, rules, and coverage on a mid-term basis if allowed by Florida law. The following coverages may be subject to change:

Part **A** - Liability Coverage
Part **B** - Medical Payment Coverage
Part **C** - Uninsured Motorist Coverage
Personal Injury Protection Coverage

Modifications may affect your premium. You will be issued written notification within 30 days of any modifications made under this provision.

C. The following provisions are added:
**DUTY TO REPORT CHANGES**

You must promptly report to us all changes, including additions and deletions, in policy information. Further, you must report to us certain changes no later than 30 days after the change occurs. These are changes to:

1. your residence address;
2. operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses;
3. the location where your vehicle is principally garaged;
4. the persons who regularly operate a covered auto;
5. the driver's license or operator's permit status of you, a relative, or a resident of your household.

**STORAGE COSTS**

If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors. (Dividends are not guaranteed.)

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

Includes some copyrighted material of Insurance Services Office, Inc., with its permission.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNINSURED MOTORISTS COVERAGE - FLORIDA (NON-STACKED)**

PERSONAL AUTO
AS 2125 03 16
(PP 04 42 06 94)

**I. PART C - UNINSURED MOTORISTS COVERAGE**

Part **C** is replaced by the following:

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

1. You or any "family member".
2. Any other person "occupying":
   a. "Your covered auto" with your express or implied permission; or
   b. Any other auto operated by you.
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.
3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:
   a. You or any "family member";
   b. A vehicle which you or any "family member" are "occupying"; or
   c. "Your covered autos".

If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member" unless it is a "your covered auto" to which Part **A** of the policy applies and liability coverage is excluded for any person other than you or any "family member" for damages sustained in the accident by you or any "family member".
2. Operated on rails or crawler treads.
3. Designed mainly for use off public roads while not on public roads.
4. While located for use as a residence or premises.

**D.** Payment of Loss – Any amount due is payable:

1. to the insured or his authorized representative
2. if the insured is a minor, to his parent or guardian
3. if the insured is deceased, to his surviving spouse; otherwise
4. to a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

**EXCLUSIONS**

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By any named insured or "family member" while "occupying" any motor vehicle owned by any named insured or "family member", for which this coverage was not purchased under this policy.



**2.** By any "family member" while "occupying" any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

**1.** If that "insured" or the legal representative settles the "bodily injury" claim without our consent.

However, this exclusion **(B.1.)** does not apply:

  **a.** If such settlement does not prejudice our right to recover payment; or

  **b.** To a settlement made with the insurer of a vehicle described in Section **2.** of the definition of "uninsured motor vehicle".

**2.** While "occupying" "your covered autos" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used for compensation in connection with a commercial ridesharing program, whether or not a passenger is "occupying" the vehicle. This exclusion **(B.2.)** does not apply to a share-the-expense car pool.

**3.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This exclusion does not apply to a "family member" using "your covered auto" which is owned by you.

**4.** With respect to damages for pain, suffering, mental anguish or inconvenience unless the "bodily injury" consists in whole or in part of;

  **a.** Significant and permanent loss of an important bodily function;

  **b.** Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

  **c.** Significant and permanent scarring or disfigurement; or

  **d.** Death.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

**1.** Workers' compensation law; or

**2.** Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

**A.** When the "insured" is "occupying" "your covered auto" at the time of the accident:

**1.** The limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to that "your covered autos" is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in the accident; and

**2.** Subject to this limit for each person, the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to that "your covered auto" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

**B.** When the "insured" is not "occupying" "your covered auto" at the time of the accident:

**1.** The highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to any of "your covered auto" is our maximum limit of liability for all damages, including damages for care, loss of service or death, arising out of "bodily injury" sustained by any one person in that accident; and

**2.** Subject to this limit for each person, the highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to any of "your covered autos" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



AS 2125 03 16
(PP 04 42 06 94)

1. Part **A** of this policy;
2. No-fault coverage; or
3. Automobile medical payments coverage.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment had been made by or on behalf of persons or organizations who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
   1. Worker's compensation law; or
   2. Disability benefits law.

F. With respect to coverage under Paragraph **2.** of the definition of "uninsured motor vehicle", we will reduce the "insured's" total damages by any amount available to that "insured", under any bodily injury liability bonds or policies applicable to the "uninsured motor vehicle", that such "insured" did not recover as a result of a settlement between that "insured" and the insurer of an "uninsured motor vehicle". However, any reduction of the "insured's" total damages will not reduce the limit of liability for this coverage.

This paragraph **(F.)** shall not apply if we advance payment to the "insured" in an amount equal to the tentative settlement with the insurer of the "uninsured motor vehicle".

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Uninsured Motorists Coverage:

1. Any recovery for damages sustained by you or any "family member":
   a. While occupying a vehicle owned by you or any "family member" may equal, but not exceed, the limit of liability for Uninsured Motorists Coverage applicable to that vehicle.
   b. While occupying a vehicle not owned by you or any "family member" may equal, but not exceed, the sum of:
      (1) The limit of liability for Uninsured Motorists Coverage applicable to the vehicle you or any "family member" were occupying at the time of the

accident; and
      (2) The highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member".
   c. If at the time of the accident the injured person is not "occupying" a motor vehicle, he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which he is insured as a named insured or as an insured resident of the named insured's household.

2. Any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

**ARBITRATION**

A. If we and an "insured" do not agree:
   1. Whether that "insured" is legally entitled to recover damages; or
   2. As to the amount of damages which are recoverable by that "insured";

   from the owner or operator of an "uninsured motor vehicle" then the matter may be:

   1. Mediated, in accordance with the Mediation provision contained in Part F of the policy, if the damages resulting from "bodily injury" are for $10,000 or less; or
   2. Arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

   If either party demands mediation, the mediation must be completed before arbitration can occur.

B. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

C. Each party will:
   1. Pay the expenses it incurs; and
   2. Bear the expenses of the third arbitrator equally.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



AS 2125 03 16
(PP 04 42 06 94)

**D.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**1.** Whether the "insured" is legally entitled to recover damages; and

**2.** The amount of damages.

### FLORIDA ARBITRATION CODE

If we and an "insured" agree to arbitration, the Florida Arbitration Code will not apply.

### ADDITIONAL DUTY

A person seeking Uninsured Motorists Coverage under Section 2. of the definition of "uninsured motor vehicle" must also promptly:

**1.** Send us copies of the legal papers if a suit is brought; and

**2.** Notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

**II. PART F - GENERAL PROVISIONS**

The following is added to the Our Right To Recover Payment provision in Part F:

### OUR RIGHT TO RECOVER PAYMENT

Our rights do not apply under Paragraph **A.** with respect to coverage under Section **2.** of the definition of "uninsured motor vehicle" if we:

**1.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "uninsured motor vehicle"; and

**2.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**1.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**2.** We also have a right to recover advance payment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.





THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PERSONAL INJURY PROTECTION COVERAGE - FLORIDA

AS 2090 01 13

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

| Benefits | Limit Of Liability |
|---|---|
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Replacement Services | No specific dollar amount |
| Accidental Death | $ 5,000 |
| Maximum Limit For The Total Of All Personal Injury Protection Benefits for an "Emergency medical condition" | $10,000 |
| Maximum Limit For The Total Of All Personal Injury Protection Benefits for all other "bodily injury" | $2,500 |

**Personal Injury Protection Coverage Deductible**

As indicated below or in the Declarations, all expenses and losses described under required personal injury protection in FLA. STAT. S.627.736(1) are subject to a deductible of $      applicable to:

☐ The "named insured".

☐ The "named insured" and any dependent "family member".

**Exclusion Of Work Loss**

Work loss does not apply as indicated below or in the Declarations:

☐ Work loss will not be provided for the "named insured".

☐ Work loss will not be provided for the "named insured" and any dependent "family member".

## I.  DEFINITIONS

The Definitions section is amended as follows:

A. For the purposes of this endorsement, a "motor vehicle" shall be deemed to be owned by a person if that person:
1. Holds the legal title to such vehicle.
2. Is a debtor having the right to possession, if such vehicle is the subject of a security agreement.
3. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:
   a. Has an option to purchase; and
   b. Is for a period of at least 6 months.
4. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:
   a. Does not have an option to purchase;
   b. Is for a period of at least 6 months; and
   c. Requires the lessee to secure insurance.

B. The following definitions are replaced:
1. "Family member" means a person related to the "named insured" by blood, marriage or adoption who is a resident of the "named insured's" household. This includes a ward or foster child.
2. "Occupying" means:
   a. In or upon;
   b. Entering into; or
   c. Alighting from.

3. "Your covered auto" means a "motor vehicle" owned by the "named insured" and for which security is required to be maintained under the Florida Motor Vehicle No Fault Law, and either:
   a. A premium is charged; or
   b. It is a trailer, other than a mobile home, designed for use with a "motor vehicle".

C. The following definitions are added:
1. "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:
   a. In accordance with the generally accepted standards of medical practice;
   b. Clinically appropriate in terms of type, frequency, extent, site and duration; and
   c. Not primarily for the convenience of the patient, physician or other health care provider.

2. "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
   a. Serious jeopardy to patient health.
   b. Serious impairment to bodily functions.
   c. Serious dysfunction of any bodily organ or part.



3. "Motor vehicle" means:
   a. Any self-propelled vehicle with 4 or more wheels which is:
      (1) Designed; and
      (2) Required to be licensed;
      for use on Florida highways.
   b. Any trailer or semi-trailer designed for use with such vehicle.

   However, "motor vehicle" does not include:
   a. Any motor vehicle which is:
      (1) Used in mass transit other than public school transportation;
      (2) Designed to transport more than 5 passengers (excluding the operator); and
      (3) Owned by a:
         (a) Municipality;
         (b) Transit authority; or
         (c) Political subdivision of the state.
   b. A mobile home.

4. "Named insured" means:
   a. The person named in the Declarations; or
   b. That person's spouse, if a resident of the same household.

5. "Pedestrian" means a person who is not "occupying" a self-propelled vehicle.

D. "Insured" as used in this endorsement means:
   1. The "named insured" or any "family member" while:
      a. "Occupying" a "motor vehicle"; or
      b. A "pedestrian" struck by a "motor vehicle."
   2. Any other person while:
      a. "Occupying" "your covered auto"; or
      b. A "pedestrian struck by "your covered auto."

## II. PERSONAL INJURY PROTECTION COVERAGE

**INSURING AGREEMENT**

A. We will pay in accordance with the Florida Motor Vehicle No-Fault Law, personal injury protection benefits to or for an "insured" who sustains "bodily injury." The "bodily injury" must be caused by an accident arising out of the ownership, maintenance or use of a "motor vehicle."

B. Subject to the limits shown in the Schedule or Declarations, personal injury protection benefits consist of the following:
   1. Medical expenses, 80% of reasonable expenses for "medically necessary":
      a. Medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services; and
      b. Prosthetic devices.
      
      Medical expenses shall only be reimbursed for such services and care that are lawfully provided, supervised, ordered, or prescribed by a health care provider or facility authorized under Florida's Motor Vehicle No-Fault Law.

   2. Work loss. With respect to the period of disability of an "insured", 60% of any loss of income and earning capacity from that "insured's" inability to work due to "bodily injury". However, work loss does not include any loss after an "insured's" death.

   3. Replacement services. With respect to the period of disability of an "insured", all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the "insured" would have performed, without income, for the benefit of his household had he not sustained "bodily injury."

   4. Accidental death. A death benefit.

**EXCLUSIONS**

A. We do not provide Personal Injury Protection Coverage for any "insured":
   1. While operating "your covered auto" without the "named insured's" express or implied consent.
   2. If that "insured's" conduct contributed to his "bodily injury" under any of the following circumstances:
      a. Intentionally causing "bodily injury" to himself; or
      b. While committing a felony.
   3. Other than the "named insured", if that "insured" owns a "motor vehicle" for which security is required under the Florida Motor Vehicle No-Fault Law.
   4. Other than the "named insured" or any "family member", who is entitled to personal injury protection benefits from a person who owns a "motor vehicle" which is not a "your covered auto" under this policy, or from that vehicle owner's policy.
   5. Who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

B. We do not provide Personal Injury Protection Coverage for:
   1. The "named insured" or any "family member" while "occupying" a "motor vehicle" which is:
      a. Owned by the "named insured"; and
      b. Not a "your covered auto" under this policy.
   2. Any "pedestrian", other than the "named insured" or any "family member" who is not a legal resident of Florida.

C. Under Personal Injury Protection we do not provide coverage for:
   1. Massage, regardless of the person, entity or licensee providing massage, and a licensed massage therapist may not be reimbursed for medical benefits.



**2.** Acupuncture, regardless of the person, entity or licensee providing acupuncture, and a licensed acupuncturist may not be reimbursed for medical benefits.

**LIMIT OF LIABILITY**

**A.** The limits of liability shown in the Schedule or Declarations for Personal Injury Protection Coverage are the most we will pay to or for each "insured" injured in any one accident, regardless of the number of:

1. "Insureds";
2. Policies or bonds applicable;
3. Vehicles involved; or
4. Claims made.

The maximum limit of liability for the total of all personal injury protection benefits shown in the Schedule or Declarations is the total aggregate limit for personal injury protection benefits available, to or for each "insured" injured in any one accident, from all sources combined, including this policy if the insured receives initial services and care within 14 days after the motor vehicle accident.

**B.** Any coverage provided under Part **C** of this policy shall be excess over any personal injury protection benefits paid or payable.

**C.** Any amounts payable under this coverage shall be reduced by any amounts paid or payable for the same elements of loss under any Workers' compensation law.

**D.** Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

**E.** The amount of any deductible shown in the Schedule or Declarations must be applied to 100 percent of the following required personal injury protection related expenses and losses:

1. The total amount otherwise payable under this coverage for:
   a. Medical expenses;
   b. Work loss; and
   c. Replacement services;
   for each "insured" to whom the deductible applies.
   Accidental death is not subject to a deductible.

**F.** Any amounts payable under this coverage for medical expenses shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law.

We will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will we pay more than 80 percent of the following schedule of maximum charges:

a. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under

   I. The participating physicians fee schedule of Medicare Part B, except as provided in sub-subparagraphs II and III.

   II. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   III. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.





## OTHER INSURANCE

A. No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an "insured" receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

B. If an "insured" sustains "bodily injury" while:
   1. "Occupying"; or
   2. Struck by a "motor vehicle" rented or leased under a rental or lease agreement;

the personal injury protection benefits afforded under the lessor's policy shall be primary.

This provision (B.) does not apply if the face of the rental or lease agreement contains, in at least 10-point type, the following language:

The valid and collectible personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of personal injury protection coverage required by FLA. STAT. SECTION 627.736 and SECTION 324.021(7).

## III. PART E - DUTIES AFTER AN ACCIDENT OR LOSS

The following language is added to **Part E** - duties after an accident or loss:

E. Any insured, including an omnibus insured, seeking Personal Injury Protection coverage must also:
   1. Cooperate with us in the investigation, settlement, or defense of any claim or suit. Investigation includes, but is not limited to, recorded interviews within 30 days of our request at a reasonable location, while not in the presence of any other person or establishment making a claim or claiming benefits. This is not intended to prevent the presence of the insured's or claimants personal representative. The recorded interview may be recorded by audio, video, court reporter or any combination thereof; however, medical examinations are not subject to recorded interviews.
   2. Promptly give us written proof of claim under oath if required. Such proof shall include:
      a. Full details of the nature and extent of the injuries and treatment received and contemplated; and
      b. Any other information which may assist us in determining the amount due and payable.
   3. As often as we reasonably require, submit to examination under oath within 30 days of our request at a reasonable location, while not in the presence of any other "insured" and sign the transcribed document after review. The examination under oath may be recorded by audio,

video, court reporter or any combination thereof; however, medical examinations are not subject to audio or video recording.
   4. Submit as often as we reasonably require to mental or physical exams. We will:
      a. Pay for these exams; and
      b. Forward a copy of the medical report to that person if requested.

If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent personal injury protection or medical payments benefits.

## IV. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The **Fraud** provision is replaced by the following:

   **FRAUD**

   We do not provide Personal Injury Protection Coverage for an "insured" if that "insured" has committed, by a material act or omission, any insurance fraud relating to Personal Injury Protection Coverage under this policy, and if the fraud is:
   1. Admitted to in a sworn statement by the "insured"; or
   2. Established in a court of competent jurisdiction.

   Any insurance fraud shall void all Personal Injury Protection Coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of "insured's", fraud shall be recoverable from that "insured".

B. Paragraph **A.** of the Legal Action Against Us provision is replaced by the following:

   **LEGAL ACTION AGAINST US**

   A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us:
      1. Until the claim for benefits is overdue in accordance with the provisions of paragraph E.1. of Part F; and
      2. Until a demand letter is provided to us in accordance with the requirements of the Florida Motor Vehicle No-Fault Law; and
      3. With respect to the overdue claim specified in the demand letter, if we have:
         a. Paid the overdue claim; or
         b. Agreed to pay for future treatment not yet rendered.

   Within 30 days from the date of receipt of the demand letter by us, in accordance with the requirements of the Florida Motor



Vehicle No-Fault Law. The demand letter shall be mailed to us by U.S. certified mail or registered mail, return receipt requested.

C. Paragraph **B.** of the Policy Period and Territory provision is replaced by the following:

**POLICY PERIOD AND TERRITORY**

B. The policy territory is:
1. Florida.
2. The United States of America, its territories or possessions or Canada.

   This provision **(B.2.)** applies only to:
   a. The "named insured" or any "family member" while "occupying" "your covered auto"; or
   b. The "named insured" while "occupying" a "motor vehicle":
      (1) Owned by any "family member"; and
      (2) For which security is maintained as required by the Florida Motor Vehicle No-Fault Law;

D. The Our Right To Recover Payment provision is replaced by the following:

**OUR RIGHT TO RECOVER PAYMENT**

A. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:
1. Execute and deliver instruments and papers and do whatever else is necessary to secure our rights; and
2. Do nothing after loss to prejudice these rights.

B. If we make a payment under this coverage and the person to or for whom payment was made sustained "bodily injury" while:
1. "Occupying"; or
2. A "pedestrian" struck by;

   a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle or that person's insurer.

E. The following provisions are added:

**PAYMENT OF BENEFITS**

1. Benefits payable under this coverage will be overdue if not paid within 30 days after written notice of loss and the amount of loss have been filed with us in accordance with the

provisions of the Florida Motor Vehicle No-Fault Law.

2. We may, at our option, pay any medical expense benefits to the:
   a. "Insured"; or
   b. Person or organization providing services or supplies for such benefits.

   However, we will not pay:
   a. A claim or charges for such benefits made by a:
      (1) Broker, as defined in the Florida Motor Vehicle No-Fault Law; or
      (2) Person making the claim on behalf of such broker.
   b. Any charge or reimbursement made by or on behalf of a clinic that is required to be licensed with the Agency For Health Care Administration:
      (1) But is not so licensed; or
      (2) That is otherwise operating in violation of the Florida Health Care Clinic Act.
   c. A claim or charges for such benefits:
      (1) For any service or treatment that was not lawful at the time rendered;
      (2) To any person who knowingly submits a false or misleading statement relating to the claim or charges;
      (3) With respect to a bill or statement that does not substantially meet the applicable requirements of FLA. STAT. SECTION 627.736(5) (d);
      (4) For any service or treatment that is:
         (a) Upcoded;
         (b) That is unbundled when such treatment or service should be bundled;
         in accordance with the provisions of the Florida Motor Vehicle No-Fault Law;
      (5) For any medical services or treatment billed by a physician and not provided in a hospital unless such services or treatment:
         (a) Are actually rendered by the physician or are incident to the physician's professional services; and
         (b) Are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services or treatment that were rendered and billed.
   d. For any invalid diagnostic test as determined by the Florida Department of Health in accordance with the Florida Motor Vehicle No-Fault Law.
   e. Charges for any services rendered by any person who violates the provisions of FLA. STAT. SECTION 817.234(8) or 817.505



in regard to the "insured" for whom such services were rendered and with respect to soliciting business or causing business to be solicited from any "insured" involved in a motor vehicle accident for the purpose of making:

(1) Motor vehicle tort claims; or

(2) Claims for personal injury protection benefits.

**f.** If a medical services provider sues the "insured" because "we" refuse to pay medical expenses, which "we" deem to be unreasonable or unnecessary, "we" will pay resulting defense costs and any resulting judgment against the "insured." "We" will choose the counsel. The "insured" must cooperate with "us" in the defense of any claim or lawsuit. "We" will pay other reasonable expenses incurred at "our" request.

**3.** If a person seeking Personal Injury Protection Coverage is injured while committing a felony, we shall withhold benefits until, at the trial level:

**a.** The prosecution makes a formal entry on the record that it will not prosecute the case against that person;

**b.** The charge is dismissed; or

**c.** That person is acquitted.

## MODIFICATION OF POLICY CHANGES

**1.** Any coverage provided under Parts B or C of this policy shall be excess over any personal injury protection benefits paid or payable.

**2.** Regardless of whether the limits for personal injury protection benefits have been exhausted, any coverage provided under Part B shall pay for the amount of any claim for medical

expenses payable under this coverage which exceeds the 80% limitation for medical expenses.

**3.** No coverage is provided under Part B for the amount of any applicable deductible under this coverage.

## PROVISIONAL PREMIUM

**1.** In the event of any change in the:

**a.** Rules;

**b.** Rates;

**c.** Rating plan;

**d.** Premiums; or

**e.** Minimum premiums;

applicable to this coverage, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under:

**a.** Part **A**;

**b.** Part B; or

**c.** Part **C**;

of this policy shall be deemed to be provisional and subject to recomputation.

**2.** If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to the "named insured", in accordance with the Florida Motor Vehicle No-Fault Law, with respect to insurance provided under a previous policy.

**3.** If the final recomputed premium exceeds the premium shown in the Declarations, the "named insured" shall pay us:

**a.** The excess amount; and

**b.** The amount of any return premium previously credited or refunded.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1993, 1995, 1999, 2003



## OPTIONAL TRANSPORTATION EXPENSES COVERAGE

AS 2225 06 05

The provisions and exclusions that apply to Part D - Coverage for Damage to Your Auto also apply to this endorsement except as changed by this endorsement.

Optional Transportation Expenses Coverage applies only if:

1. The loss is caused by other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto;
2. The loss is caused by **collision** only if the Declarations indicate that Collision Coverage is provided for that auto; and
3. **Your covered auto** or the **non-owned auto** is withdrawn from use for more than 24 hours. In the event of a total theft, the vehicle must have been reported missing for at least 48 hours.

## OPTIONAL TRANSPORTATION EXPENSES COVERAGE

If:

1. You choose to allow us to make the rental car arrangements with a specific vendor; and
2. You choose to bring the damaged vehicle to a Total Liberty Care (TLC) facility for all repairs.

We will pay, without application of a deductible, temporary transportation expenses incurred by you for renting a substitute auto, as defined by our rental car provider, until the repairs are completed, when there is a loss to **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded.

If you require a vehicle which exceeds the optional daily limit shown on the policy Declarations Page, and we make the arrangements, you will only have to pay the difference between the expense of the vehicle you choose and the optional transportation expenses daily limit shown in the policy Declarations Page.

**OR**

If you choose to make your own substitute vehicle arrangements, or choose a repair facility other than a Total Liberty Care (TLC) facility, or your vehicle is declared a total loss, the following applies for expenses incurred from companies in the business of renting vehicles:

When there is a loss to a **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded, we will pay, without application of deductible, the daily amount shown on the policy Declarations Page to a maximum of 30 days for:

1. Additional transportation expenses incurred by you for renting a substitute auto.
2. Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of **your covered auto.**
3. Loss of use expenses for which you become legally responsible in the event of loss to a **non-owned auto.**

All coverage provided by this endorsement shall only apply once for any single occurrence. Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto.**

(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

AS 2225 06 05

Liberty Mutual Insurance Group





# SPLIT LIABILITY LIMITS

PP 03 09 04 86

## SCHEDULE

| Bodily Injury Liability | $ _____ | each person |
|---|---|---|
| | $ _____ | each accident |
| Property Damage Liability | $ _ _ _ _ _ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 09 04 86

Copyright, Insurance Services Office, inc., 1985



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

**PERSONAL AUTO**
**PP 13 01 12 99**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

## I. Definitions

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

## II. Part D - Coverage For Damage To Your Auto

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

**PP 13 01 12 99**

Copyright, Insurance Services Office, Inc., 1999

**Page 1 of 1**





## FULL WINDSHIELD COVERAGE

**PERSONAL AUTO**
**PP 03 25 08 86**

### COVERAGE FOR DAMAGE TO YOUR AUTO

The provisions and exclusions that apply to Part D also apply to this endorsement except as modified by this endorsement.

The first paragraph of the Insuring Agreement in Part D is amended by the addition of the following:

We will pay under Other Than Collision Coverage for the cost of repairing or replacing the damaged windshield on "your covered auto" without a deductible. We will pay only if the Declarations indicates that Other Than Collision Coverage applies.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 25 08 86

Copyright, Insurance Services Office, Inc., 1986

**Page 1 of 1**





THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIABILITY COVERAGE EXCLUSION ENDORSEMENT

**PERSONAL AUTO**
PP 03 26 06 94

**LIABILITY COVERAGE**

The following exclusion is added to Part **A**, Section **A**:

We do not provide Liability Coverage for any "insured" for "bodily injury" to you or any "family member".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 26 06 94

Copyright, Insurance Services Office, Inc., 1993

Page 1 of 1





# AUTOMATIC TERMINATION ENDORSEMENT

**AS 1046** (Ed. 2-05)

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

AUTOMATIC TERMINATION. If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. You are permitted by law to appeal this cancellation. An appeal must be filed no later than 20 days before the effective date of the cancellation set forth in this notice. Forms for such appeal and the regulations pertaining thereto may be obtained from the office. The office does not have the authority to extend the effective date of cancellation; therefore you should obtain replacement coverage prior to the effective date of the cancellation.



## LOSS PAYABLE CLAUSE

PP 03 05 08 86

Loss Payee: _____

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto." However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 05 08 86

Copyright, Insurance Services Office, Inc., 1986



# TOWING AND LABOR COVERAGE - FLORIDA

AS 2208FL 03 16

We will pay for emergency roadside assistance charges incurred each time "your covered auto" or any "non-owned auto" is disabled due to mechanical or electrical breakdown. This includes:

1. necessary towing charges when you call Liberty Mutual Roadside Assistance and allow us to make arrangements for the tow to the nearest repair facility from the place of disablement;

2. towing charges up to the amount shown on the policy Declarations Page when you either

   a) arrange for the tow; or

   b) request a tow to a repair facility other than the nearest repair facility from the place of disablement; or

3. when a tow is not required, labor charges incurred at the place of disablement, not to exceed the amount shown on the policy Declarations Page.

Coverage for 1., 2., and 3. above is limited to no more than four occurrences per vehicle in a 12 month policy period. In addition to the per vehicle limit, an additional four occurrences are granted per policy period.

The nearest repair facility is determined by Liberty Mutual.

This coverage must be shown in the Declarations for the specific disabled vehicle which has this coverage.

If a "non-owned auto" is disabled, we will provide the coverage listed above only if you have purchased Towing and Labor Coverage for at least one "your covered auto" and it is shown in the Declarations. This endorsement must be attached to the Change Endorsement when issued after the policy is written.

AS 2208FL 03 16

**Liberty Mutual Insurance Group**

Page 1 of 1

